Good morning, Your Honors. May it please the Court, Kirk Passage for Ticketmaster. I'd like to say I'm pleased to absolutely agree with that assessment. I'd like to reserve two minutes for rebuttal, and if I go beyond five minutes here, it will only be because of questions. From our perspective, I think there are three points that are worth talking about today. Number one is our fundamental point. I would concede that if the Court disagrees with this point, we're in trouble. But from our perspective, what the underlying Schlesinger lawsuit involved was misrepresentations, plain and simple. Without the misrepresentations, there would have been no lawsuit. Sure, but the exclusion has to be an exclusion of things that are otherwise covered. Otherwise, you wouldn't have an exclusion. That I agree, Your Honor, but when it eviscerates the coverage, because we're not talking here about someone who does something other than sell services and tickets for profit. That's the definition of the professional services in the insurance policy. Ticketmaster, by definition, is in the business of selling things and providing services. And so you cannot say that if it touches, and I think even Illinois Union would agree, that if it just touches upon fees, that's not enough. It has to be more than relating in some way to fees, because there's not a single aspect of our business that doesn't involve fees. So the question is, here, are we close enough? Now, I would submit that we're not, because I think fundamentally it cannot be said that this claim, that everything in this lawsuit, every piece of this lawsuit comes out of fees, because my starting premise was if there was no misrepresentation, there would be no claim. There's not a claim here that we had illegal charges, that miscalculations were done. The claim is fees and charges and things relating to them were misrepresented. Now, I don't know whether one says that... Or another way you could say it is because they were higher than what was represented to be covered. That's fair, Your Honor. It is true. So it is about how high they were. Well, it's partially about how high. Partially it's the misrepresentations alleged to be that we were purporting to pass straight through to UPS, for example, the fee we were collecting. That wasn't true. It wasn't a straight pass-through of what UPS was charging. That's the alleged misrepresentation, is that we didn't just say... I mean, if you believe what these folks said in the complaint, our website, our promotional materials, our advertisements said, in essence, we do a pass-through. The misrepresentation wasn't that. It was we weren't passing through the straight fee. If it had just been... Because you were charging more than that. You were charging more money than a pass-through would be. But, Your Honor, that statement could be made about anything that we do, because it will ultimately go back to the fees. Well, could you back up for a minute? Tell me what the exclusion does cover. Well, I think the exclusion would cover, for example, if we charge somebody for four tickets instead of three. Well, no. You could say the problem there was you only sent them three tickets. It was a service problem. Well, I'm not arguing because you read the exclusion, it does relate to the professional services we provide. I'm not saying that there's no possibility the exclusion would apply to some things. Well, that's when I want to know what it is. Well, and I'm giving you an example... You couldn't make a similar argument about it. No, I would say, for example, number one, I think if there's an error in the number of tickets being sold, and we charge for four and provide for three, I think if we delivered seats in the balcony instead of the orchestra pit and charged for the balcony seats by mistake, that would be an issue. I do think that has nothing to do with the misrepresentation. That's a classic fee dispute. We accidentally charged... Could we cast that same claim as saying, that these were balcony seats and they were orchestra seats and they were really balcony seats? Your Honor, I think if that's the allegation that's made, then we are in a different circumstance. I do agree that if we misrepresented something, I would tell you that's a different situation. If I represented on my website that I have 50 seats in Section X that are going to go for $50 apiece, and those are pit seats, and, in fact, they're high balcony seats at the Forum, that's a different problem. And that one, I would say, is a misrepresentation situation because it doesn't... If we'd actually advertised the seats correctly, there would be no claim. If we said they were high orchestra seats at the Forum instead of seats in the pit, we'd be in a different circumstance. Counsel, I still don't understand why a misrepresentation in the amount of the pass-through doesn't fall within the definition of the exclusion of a claim arising out of any dispute involving fees, expenses, or costs paid to or charged by the insurer. Well, I think, Your Honor, I think there's two answers to that. Number one, when you look at the exclusion, if you interpret it as broadly as Illinois Union does, then I think you go contrary to the teachings of this Court in the Conestoga case, which relied upon the California Supreme Court decisions in Garvey and State Farm v. Partridge because that kind of interpretation would allow you to... I mean, the question that Judge Berzon posed, I think, is the question that should be reframed for Illinois Union. It's their exclusion and their burden to come up with... Well, I think there's an easy answer. There are some cases. I mean, one of them was if somebody said... if they say you're selling you a seat by an obstructive view and it turns out it's actually an obstructive view, so your dispute is... but your problem is I didn't get what I contracted for. Well, Your Honor, in fact, I think that's one of the examples of a situation that Illinois Union cited in this brief as something that might be covered. But if you go look at that case that they cite, that's not the situation. Well, I'm not talking about a case. I'm talking about just something that would seem plainly to fit.  I'm talking about an example of a case that would remain within the coverage and not within the exclusion. Because the difference here is that the misrepresentation was about the fee. It wasn't a misrepresentation about something else. It wasn't a misrepresentation about the service, and it wasn't a misrepresentation about what you were getting, and it wasn't a misrepresentation about the play, who was going to be in the lead. And it wasn't a misrepresentation... it was a misrepresentation about the fee. Your Honor, we would not disagree with you that there are things that would be misrepresentations that would be unrelated to the fee per se, except that what often happens in that situation... picture this hypothetically. If you go to see person X in the play, and there's no warning that they're not going to be there, like there is on Broadway plays, and you don't get person X, then you would have a misrepresentation claim. Now, we can split these nuances every which way, and I agree, it may be nuanced splits, but it's not our burden to be clear on this. It is their burden as the draft of the exclusion. And I would submit, if you take a look at the other exclusions in the policy, and we pointed this out, you look at the exclusions in Endorsement 2 and 3 at pages 60 and 61 of the Excerpts of Record, or you look at Exclusion AA... But those have to do with a nexus question, right? What's the nexus? This isn't really a nexus question. The question is, what's a dispute about fees? You don't need the nexus language. Well, you do, because anything could involve a dispute. I mean, look, when folks sue Ticketmaster, even the examples they give, they always are asking for return of what they paid for their fees. That's the remedy, but it's not the dispute. Well, the dispute does go into, we paid too much, we paid more than we should have, we didn't get what we were promised, you misrepresented this. What I'm saying, Your Honor, is if we're going to draw these kind of distinctions, these folks now know how to draw them in their exclusion. When they put an exclusion in the same policy as they did, that uses the words directly or indirectly, resulting from or arising out of, or in any way related to, that's Exclusion AA in the policy, and it relates to asbestos. Now, if we read the fee exclusion as broadly as you're suggesting and as Illinois Union argues, then most of the language in that exclusion, most of the language in the Exclusion and Endorsements 2 and 3 is rendered surplusage. It adds absolutely nothing. And that... Can I just change the focus for a minute here? What I struggle with is whether there's ambiguity. Under McKinnon, Illinois Union has the burden of showing that its construction of the exclusion is the only reasonable one. On the other hand, you need to be able to show that there's at least two, if not more, reasonable constructions of the term fees, expenses, or costs. What are... What is your best argument for the fact that there are two reasonable interpretations of exclusion? I would take the simplest argument, Your Honor, which is we're in the business of selling tickets. That's what Ticketmaster does. And when you interpret it in that context, I believe the exclusion is limited to one, as I gave in response to Judge Berzon, on the point being, did we sell tickets in a different place than we intended to? Where we're not talking about misrepresentation. We screwed up the delivery. We offered tickets, we sent tickets for the wrong show, we sent tickets in the wrong seating. Those kinds of things are classic fee disputes. Or we accidentally charged more than we should have. Someone calls up and says, I didn't get mine UPS. I shouldn't pay that fee. I got them emailed to me. That's the kind of fee dispute that I think would be clearly within the ambit of that exclusion. When you tag misrepresentation on, and we have the second cause of action in this complaint is purely a misrepresentation cause of action. It's not a fee cause of action. It's false advertising. That is all about misrep. But it's a claim. I keep getting back to the language of the exclusion. And the fact that it is a misrepresentation claim that arises out of fees, expenses, or costs, why isn't that covered by the provision? Because I don't think it arises out of that, Your Honor. And this is where I think we see it fundamentally differently. To me, if there is no lawsuit without the misrepresentation, can't be. If we had described the UPS charges accurately and double-billed them, that's a fee exclusion issue. Our computer hit the button twice. But if we had adequately and accurately disclosed these various charges that were passed to us, there would be no claim here. None. There would be nothing that we would have done that anyone would argue was illegal or wrongful. It all comes about because of the misrepresentation. And that's why when you go back to Partridge or Garvey or Conestoga, the question is, do we have two causes in a chain? That would take us in the Garvey setting. Or do we have two independent causes, which would be Partridge? I think this Court got it right in Conestoga that said it doesn't really matter which way you slice and dice it because you've got one thing that's excluded, if you accept the fee analysis, and you've got one thing that is not excluded, which is the misrepresentation. Under Pension Trust, Manzarek, CNA, you can line the cases up. All it takes is a couple of words in the complaint to trigger the duty to defend. We're not talking about duty to indemnify today. We're not talking about what the judgment would look like and whether it would be a judgment based on fees. We're talking about are there just at least two words in the complaint that would suggest coverage. We think this complaint is all about misrepresentation. Without misrepresentation, we wouldn't be here. That's why you think there are two different interpretations of the exclusion. Absolutely. If you look at it as a misrepresentation, it's different than what they're saying. It is, and I think to categorically bar any claim for misrepresentation or omission. By the way, that AA exclusion that I referenced, that's got all this broad language about indirectly related to, at the tail end of that exclusion, it says including failure to warn. When we have a policy that covers omissions and they know how to draft an exclusion that basically addresses omission expressly and they don't do it here, and this exclusion goes to the core of our business, to me, it's not unambiguous. It's not only one reasonable interpretation. Not in the context of Ticketmaster. If you want to reserve some time, you may just speak. Thank you, Your Honor. Yes. Good morning. My name is Alan Joklin and I represent Illinois Union. Whenever a business sends a bill to a customer and there is a disagreement about the amount, there's a misrepresentation. One side says, you owe X. The other side says, no, I don't. The bill is for services, so there has to be some type of a – there can always be an argument made that it's two different things, a misrepresentation and also a fee part. But what this is is this case is a misrepresentation about a fee. It's a dispute about a fee. As Ticketmaster indicated – So from your perspective, the fact that it is a misrepresentation is not what counts. It's the fact that it involves the fee that is the issue, right? No, I think it's the fact that the misrepresentation is about the fee and nothing else. Yeah, okay. Yes. So in other words, the fact that the complaint characterizes this, the underlying complaint characterizes it in terms of misrepresentations, is not what counts from the insurance company's perspective. It's just the subject matter. So that if there were, and there is, for example, a statement of facts in connection with the ticket purchase transactions which they allege the defendant knew or should have known were untrue or misleading in nature, you're saying that if it happened to deal with any of the three items, then that's enough to take it out of the coverage. Is that right? We try to read the exclusion narrowly, and if it's a dispute that's arising out of the fees and costs that are charged or paid to a ticket master, then it's excluded. If the misrepresentation is about the fee in charge and only about the fee in charge, it's excluded. Now, they're in the business of selling tickets. If they did say a ticket for a first-row seat is $100, and they sent them, and they agreed, and they sent them a ticket for $500, there's no fee dispute. The fee is $100 for a front-row ticket. The issue would be did they live up to the side of the bargain in providing them with what they do, their core business, providing them with a ticket that the customer wanted. I'm sorry, I didn't understand that hypothetically. I thought you were going to say the opposite. If somebody says, if a ticket master advertises that a front-row seat is $100 and in charge of $500, there's a fee dispute, no? If ticket master says that we're going to provide you with a ticket to the front row, and they fail to provide that ticket, then there's a misrepresentation of something other than the fee there. Would the fee exclusion, you know, cover the entire thing? No. But here, the only thing at issue is a misrepresentation about the fee. The plaintiffs here, they got the ticket that they asked for. They got it timely. It was shipped. There was no question that it wasn't processed properly. They got what they wanted. Let me ask you about this one. According to my notes in paragraph 79, and these are my words, it's not an exact quote. They're saying the ticket master imposed a strict time limit for consumers to purchase the tickets, roughly two minutes, from the time that the website displayed the ticket choices for the event. By putting a tight time framework on consumers, they're under added pressure to make their purchase without questioning or contesting the charges imposed by ticket master. What does that have to do with the three items that you believe exclude coverage? Because what they're doing is, what I think that says, is that there's a misrepresentation about what the fees and charges are. And they're saying, these are the fees and charges on these ancillary services. Are you going to accept them? Yes or no? And then what the time pressure does is it doesn't give the people the opportunity to evaluate whether or not they're going to buy it. Do you agree that with allegations such as this, that there is more than one reasonable construction of exclusion E possible? I don't see what the construction could be. If the misrepresentation, if what's at dispute, the only thing that's at dispute here is whether or not they were increasing costs and charges rather than as a pass-through. But I thought, if I understood you correctly, you were saying that what counts is that it focuses down on the three excluded items. As long as those are included in the mix, that's all you need to exclude it. Is that right? No, it's whether or not it's that it's a fee, an expense, or a cost is what is in dispute. But suppose, I mean, their explanation was, our problem is that you didn't tell us the truth, so that we were not able to make a decision about what we wanted. We don't have any question that the, I mean, for example, if we'd known the truth, we wouldn't have gotten same-day service from UPS. We would have gotten two-day service from UPS. So you influenced our decision about what we were ordering by, and not only that, if you had told us the truth, we might not have bought from Tickle Master at all. We might have gone down to the store, got back to the theater. So our problem isn't what you were charging us, or the amount of the fee. Our problem is you weren't telling us the truth, and so we couldn't make considered consumer decisions. That's what I understand them to be saying more expansively than perhaps what's been said. But what they are failing to tell them are the details about the fee. They're not making any other misrepresentation but what the fee is. But my dispute isn't with the fee. I don't care about whether you're charging $20 or $17. What I care about is that you're telling me, you're not giving me adequate information to make a decision as to what I want. But what the complaint is saying is that, in the Schlesinger case, is that we ordered tickets. We bought the UPS in the processing. We had to pay fees that were passed through. They paid those. And then they learned that, in fact, they weren't what they represented, and they paid more. So the actual cost, what's in the Schlesinger complaint, is that the misrepresentation was that the costs were not really related. The fees were not really related to what the cost of the- What I struggle with on this is that, given what Ticketmaster does, selling in the business of selling event tickets, the way you construe exclusion, you need to apply to any dispute involving fees, expenses, or costs, I don't know what the policy would cover, what's left. No, because if- Everything related to those in the way you're doing. Because if you do, if they do represent that you're going to get a ticket that's unobstructed, or they do represent that you're going to get a ticket that's in the first row and not the top row, those things are not purely about fees and costs. Could they be- But if I understood you correctly, Joaquin, is that- Yes. If I understood you correctly, Mr. Joaquin, you're saying whatever the misrepresentation is, whatever's alleged, all you need to put it within the exclusion is to tag on fees, services, and costs. And if you do that, then it's out. Is that correct? No, it's not. Because in my example of the tickets, that wouldn't kick out that claim because the dispute is about whether or not they lived up to the bargain in providing them with the tickets, which is the core business that they are involved with. These are ancillary services, ancillary expenses that they were- Couldn't they say that this is what I paid, the expense. This is what I bargained for. And you say, well, you know, an expense is the ticket price. And you misrepresented that, but it's an expense, so we're not going to cover it. But that's not the case here. And under that case, an argument could be made. I don't know. I'm not sure Illinois Union would make that argument. But here that isn't the case. What they're arguing here is that they told us that they were passing through some charges for ancillary services, and they actually charged more than what they said they were paying. Help me with this then. Tell me what is covered. What is covered by this policy? Given your reading of Exclusion E, what is left? Well, I think that if you did hire- For example, the Rolling Stones are going to Hyde Park. If they said, we're going to give you the tickets, they're going to be on time, and they weren't on time, that would not kick out the defense of that case. But why? Because that has to do, if I understand it correctly, the three categories that we're talking about are fees, expenses, or cost. Correct. So you could tie that, I mean, you know, fees are what you pay for the service. And they'll say, well, you know, they charged me X for the Rolling Stones and Hyde Park, and they didn't give that to me. That involves a fee. I paid a fee for that. So why is there any coverage? Because what they also did, going into the concurrent, what they also did is they misrepresented that they were going to give them to you on a timely basis. In the case that we have here- So then it's a delivery issue, but, again, that's an expense. But the damages are an expense, but the dispute is whether or not they lived up to providing the ticket, which is their core business, or not. Was that the issue, whether it's a core business? I think that, well, the allegation in that case with respect to the tickets, they might allege for damages, fees and costs, but they would probably also allege you breached the agreement by failing to give me the tickets. The things that- I have a sort of supervening question that that triggers. The immediate preceding exclusion is based on or arising out of any actual or alleged breach of any contract unless such liability would have attached to the insured even in the absence of such contract. So what I'm wondering is do we have to look at all- If you read all these exclusions, it sounds like there's nothing left. And so, I mean, we're sitting here and we're saying, you're telling us, well, it would apply to a certain breach of contract claims. But if you actually look at the exclusion, it says it doesn't apply to breach of contract claims. Well, but with the contract exclusion, if you provide the tickets and they're- If there's something in the- If you've agreed to additional liability, if you've agreed something pure of the contract, but in your ordinary course of dealing, if you- It wouldn't give rise to a contract exclusion. That's why it wasn't- Contract exclusion wasn't raised in this. This was a contract between- It wasn't raised because that doesn't go to it. But because the misrepresentation here was only about the fees, the ancillary fees to go to- What I'm trying to say, my understanding of what the contract exclusion means in general is it doesn't apply if you have something else, i.e. a misrepresentation. But if it's just a breach of contract, such as all the cases you've been describing, apparently they're out too. So, I mean, really, when you start walking your way through these exclusions, unless you take the narrowest view of each of them, you're going to eat up the coverage, for sure, at least in the aggregate, if not for each one individually. But in taking the- We think it's really the only interpretation, given the facts here, is a narrow interpretation where the dispute is only based on misrepresentations of the fee. There's no other misrepresentation that's really left. With respect, Mr. Joaquin, you're far more familiar than I am with all these insurance cases. But Titan Corp seems to suggest that when you construe a contract to, in effect, nullify coverage under a policy, you can't do that under California law. And what I'm struggling with, and I gather that my colleague, Judge Verzon, is struggling with, is I have yet to hear or understand what's left. Given your interpretation of Exclusion E and, for that matter, going to the rest of them, I don't really know what's covered. But when you have a- If the insured- Go back to the Rolling Stone concept. Let's say they sold 800 pounds of ticket, and they didn't- For some negligence within the company, they failed to- There's another exclusion. There's an exclusion that says failure to perform is an exclusion. I have to see if I can find it. But there is one that would seem to directly cover what you just said. I mean, that's the problem. I understand you could take each of them and make an argument about why it's not excluding everything. But if you start- Every example you come up with seems to fall into a different exclusion. But if you have a basic misrepresentation, and you have in the provision of ticket sales the- And I'd have to sit down with each of the exclusions, which I haven't done here. But with respect to the fee exclusion, it is very narrow. The only- There's another exclusion. There's another exclusion for the actual failure of any goods, products, or services to conform to advertised quality or performance. So apparently if you sell somebody a- If you advertise that so-and-so is going to perform and somebody else performs, that seems to be out too. To use an analogy, I remember somebody said the definition of an expert is somebody that knows more and more about less and less until you know everything about nothing at all. And to some degree, this insurance policy seems to give that kind of coverage. It just- You know, this is a broad sweep, but when you start using the exclusions, there's nothing left. F also has an exclusion for the failure to provide or accept goods and services. So that seems to cover the other example that you gave us, if you don't send them the tickets. That seems to be out too. Let me see if- Let me just get to that part of the exclusion. So far, I'm just reading from D and F. Do you have the page, Your Honor? It's Exhibit A to- I think it's 52. It's Exhibit A, Record 52, but it's Page 8 of the insurance contract. I mean, I've never- I haven't seen the insurance cases go about it this way, but it seems to me that you have to- if you're going to give meaning to one exclusion, it has to be in light of the other exclusions, because if you start giving the examples of what the exclusion does cover but they're excluded too, then that doesn't help a lot. Bottom line, you can tell we're struggling with what's left. Now, the contract exclusion, I'm sorry, because I haven't looked at that this morning, but which is- That's D. D? Right. And the other one I was quoting from was F. So basically, we're talking D, E, and F. There may be others too, but just take D, E, and F for now. Well, there's no express warranty or guarantee here. I understand that. But then it goes on and says, or the failure to provide or accept goods or services. Well, anyway, the devil's in the details. Let me ask you a more general question.  For example, the Board of Directors, if they get sued in a shareholder's derivative action because they were negligent in the performance of their duties to administer the affairs of the company. Sure, and there's a lot of other things that the Arizona Emissions Policy- And there's no exclusion in this policy for that, is there? That's correct. And at that page, I didn't see one, but I haven't read the entire policy cover to cover. And I also think that when you do read these things, the exclusions narrowly as the fee exclusion here. And I think that you can tell by the exclusions that Illinois did rely on here. It didn't rely on the contract exclusion. It didn't rely on the fee exclusion because it doesn't believe that they apply. And here, what they're relying on- No, but that's not the question. The question is, in trying to figure out what is left after the fee exclusion, as you're reading it, you can't just look at the fee exclusion. You have to look at the whole contract to see, in the end, what's left. Because, as I said, many examples you were giving of what would be covered appear to be out under a different exclusion. Well, even under E, because here, under E, you don't just have fees, expense, or cost. You've got any losses of production costs, revenues, insured profits, or license fees of any kind. I mean, that's the business. We could probably do this forever, but it is fun. Actually, one of the questions I had in that regard, and then we're going to have to stop, which actually goes to the extrinsic evidence question, is this E is a little bit odd, anyway, because it appears that the rest of it, i.e. loss of production costs, revenues, insurance profits, or license fees, doesn't deal with the consumers. It deals with the productions as to which tickets are being sold. And so I almost wonder whether it wouldn't turn out that this last clause really deals with that, with fees, expenses, and costs, as between Ticketron and the producers, and not even to consumers at all. But that yields two different interpretations of the same clause. Well, the expenses or costs paid to or charged by the insured is... I understand there's not any limit, but I wonder whether in context you would read it as limited, just fees, expenses, and costs paid to or charged by the insured with regard to the production licenses, et cetera, and not with regard directly to the sale of tickets. Well, it would also apply if they were, for example, if they were, like, I guess, charging licensing fees to the customers. I think that they're all in the same grouping. I think expenses or costs paid to or charged... But you never charged licensing fees to the company, to the consumers. It was charged to the people producing the shows. But it isn't expenses, of course, costs... In any event, we are out of time, and I appreciate your answer. Thank you. Thank you. I'm intent on trying to finish this without using my full 15 minutes, given the dialogue at the start. I'd be grateful. On the directors and officers' liability question in securities and derivative actions, that's a different kind of policy that covers the directors and officers. But it is an E&O policy. It is a version of an errors and omissions policy, but in this case, ours applies to professional services that were rendered by Ticketmaster. That's an important distinction, number one. Number two, on the question of extrinsic evidence, that was one of our points. Not only did we not get to conduct the underwriting discovery to show what they thought internally their clause meant and how it applied... The district court said, you know, you had months and months and months, and then when he said, what is it that you want to discover, the district court said you couldn't articulate what you needed to discover. Well, the district court didn't have a hearing, so we didn't have a chance to articulate in the hearing. We opposed the motion. So what's the answer? Then I'll ask the question for Judge Anderson. What's the answer to the question? I think the starting point is with the underwriter deposition, which, as we indicated, we had noticed. That deposition had not been taken. Once we get removed, we're under Rule 16. We've got to do that sort of stuff. We had a motion to dismiss, and we were gone. The underwriter would testify about what the drafting intent was, where the history came from. This exclusion is manuscript. It's got a typo in it by the duplicative word any, for example. So that's the kind of evidence we would look at to demonstrate that reasonable minds could differ or they, in fact, had an interpretation. The struggle we've had today... We haven't conducted that deposition, so we don't know whether anything useful would come out of that or not. Exactly. It's possible, Your Honor, that nothing would come out of it, but the point is we're entitled to have the chance to do that discovery. And so what we're really talking about is a deposition. We didn't get a deposition. Now, I think a claims deposition would be equally helpful to show how they've applied that exclusion elsewhere. There's not a case cited where that fee exclusion has been interpreted. And is there anybody within Ticketmaster who negotiated or procured the insurance who would be prepared to offer their understanding of what they think that clause is? Well, Your Honor, the subjective, uncommunicated understanding of Ticketmaster might not be relevant. But, yes, if we had discovery of the brokers and former employees, you could go down that path. But we believe that they're drafting history, their internal dialogue showing what they thought this exclusion meant, whether they had the kind of dialogue we had today when they were pricing it about where does this apply, how broad or narrow is the coverage we're selling this company. Have you talked to your own clients? Well, we talked to our own, but if you look at the history here, this is a series of mergers and acquisitions. But point being... We're having a hard time finding anybody for Ticketmaster who knows anything about this. It's left with the company. That would be an issue for us. But we still believe the best evidence is out of the underwriters to show what they believed they were selling. I understand. Of course, they may have the same problems. Okay. Thank you very much. Thank you, Your Honor. Thank you to both counsel. The case of Ticketmaster v. Illinois Insurance Company is submitted.
judges: Berzon, Tallman, Smith